UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MATTHEW K. E., Plaintiff, v. COMMISSIONER OF SOCIAL SECURITY, Defendant. | Case No. C25-6114-MLP<br>ORDER |

## I. INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income ("SSI") and Child Disability Benefits. Plaintiff contends that the administrative law judge ("ALJ") erred in finding he did not meet or equal a listed impairment and in considering medical opinions, lay witness testimony, and Plaintiff's testimony. (Dkt. # 17.) The Commissioner filed a response arguing that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 21.) Plaintiff filed a reply. (Dkt. # 22.) Having considered the ALJ's decision, the administrative record ("AR"), and the parties' briefing, the Court

REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).[1]

## II. BACKGROUND

Plaintiff was born in 2003, has a high school education, and has no past relevant work. AR at 76. His only paid work was baling hay part time during a few summers. *Id.* at 68. Plaintiff applied in November 2021 for Child Disability Benefits and in February 2023 for SSI, with an amended alleged disability date of November 8, 2021. *Id.* at 65. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* After the ALJ conducted a hearing by phone in October 2024, the ALJ issued a decision in December 2024 finding Plaintiff not disabled. *Id.* at 65-77.

Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, that Plaintiff had severe impairments of autism spectrum disorder, attention-deficit hyperactivity disorder, and generalized anxiety disorder. AR at 68. He did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. *Id.* at 68-70. He retained the residual functional capacity ("RFC") to perform work at all exertional levels but with only short and simple instructions, performing routine and predictable tasks not in a fast-paced production environment. *Id.* at 70. He could make simple decisions, handle occasional routine workplace changes, occasionally interact with coworkers and supervisors but not in a team-oriented environment, and could not interact with the public. *Id.*

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 2.)

[2] 20 C.F.R. §§ 404.1520, 416.920.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

## III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings. *Id.*

Although the Court evaluates the record as a whole, it is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The ALJ is tasked with evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. Where the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Id.* Even if the ALJ erred, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## IV. DISCUSSION

### A. The ALJ Erred in Evaluating Medical Evidence

The Commissioner's regulations require the ALJ to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). These findings must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

*1. Bruce J. Tapper, Ph.D., 2023 and 2024 Opinions*

Dr. Tapper examined Plaintiff in May 2023 and again in August 2024, and filled out Psychological/Psychiatric Evaluation forms. AR at 1008-11, 1241-44. On both occasions, Dr. Tapper opined Plaintiff had marked or severe impairments in adapting to changes, making simple decisions, communicating and performing effectively, completing a normal work day and week, and setting goals and planning. *Id.* at 1009-10, 1242-43. In May 2023, Dr. Tapper also opined Plaintiff had a severe impairment in learning new tasks. *Id.* at 1009.

The ALJ discounted Dr. Tapper's opinions because they were not fully supported by his findings and were inconsistent with unremarkable mental status findings in the record.[3] AR at 74-75. The ALJ found Dr. Tapper's observation that Plaintiff's affect was "extremely tense and anxious" in 2023 and "somewhat blunted" in 2024 inconsistent with the examinations taking place over the phone because Dr. Tapper could not see Plaintiff. *Id.* The Commissioner argues that affect "involves observable manifestations, including facial expressions, gestures, and postures." (Dkt. # 21 at 6.) Neither the Commissioner nor the ALJ explain why information such

---

[3] The ALJ stated there was no indication that Dr. Tapper had reviewed Plaintiff's treatment records, but did not clearly articulate this as a basis for discounting his opinions. AR at 74. In any event, this would not constitute a valid reason for discounting those opinions, as an ALJ must consider all medical opinions, whether from treating, examining, or reviewing sources. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (ALJ must articulate how persuasive "all of the medical opinions" are).

as tone, pitch, word choice, pacing, and other auditory information would be insufficient to determine Plaintiff's affect. Dr. Tapper closely observed Plaintiff's speech, noting for example in 2023 that it "was at normal volume but was rapid and inconsistent. He spoke in incomplete sentences and skipped around a great deal, sometimes blocking on words and exhibiting variation of highs and lows in pitch." AR at 1011. In 2024, Dr. Tapper observed that Plaintiff's "[s]peech was at normal volume and was slightly accelerated. He spoke in somewhat of a monotone. His statements were sometimes disjointed and he asked for redirection when he became confused." *Id.* at 1244. The ALJ's finding that Dr. Tapper would not be able to observe affect over the phone was not supported by substantial evidence.

The ALJ noted that, in 2023, Dr. Tapper found certain deficits, such as in immediate memory, while other measures such as recent and remote memory, orientation, perception, and insight and judgment were normal, but does not identify any inconsistency with Dr. Tapper's opinions. AR at 74. The Commissioner does not address these statements, apparently conceding they do not constitute a valid reason to discount Dr. Tapper's opinions. The ALJ notes that, in 2024, Dr. Tapper found normal fund of knowledge and concentration, but does not identify any inconsistency undermining his opinions. *Id.* at 75.

The ALJ notes that on the 2023 form Dr. Tapper checked both the "Yes" and "No" boxes for whether concentration was normal. AR at 74; *see id.* at 1011. Because the form instructs "if no, provide detail below" and no detail was provided, it appears that concentration was assessed as normal. *Id.* at 1011. On the 2024 form, only the "Yes" box was checked and no further detail was provided. *Id.* at 1244. It thus appears that Dr. Tapper observed normal concentration on both occasions, and the ALJ does not explain how this would undermine his opinions of, for example, difficulty with adapting to change, making simple decisions, and communicating effectively.

The ALJ found Dr. Tapper's 2024 findings that Plaintiff's perception and thought process and content were abnormal appeared to be based on Plaintiff's reports. AR at 75. Psychiatric evaluations "will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient[,]" because "[u]nlike a broken arm, a mind cannot be x-rayed." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)). "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck*, 869 F.3d at 1049. Clinical interviews and mental status evaluations "are objective measures and cannot be discounted as a 'self-report.'" *Id.* In assessing thought process and content, Dr. Tapper wrote that Plaintiff "reports being troubled by racing thoughts at times. He did not endorse any unusual thought content." AR at 1244. Regarding perception, Plaintiff "reports periodic auditory hallucinations where he feels like someone is yelling his name." *Id.* As a trained clinical interviewer, Dr. Tapper's reports constitute objective evidence and cannot be dismissed as Plaintiff's self-reports.

Accordingly, the Court concludes that the ALJ's decision did not provide substantial evidence for his finding that Dr. Tapper's opinions were not supported by his clinical observations.

Regarding consistency with the record, the ALJ pointed to generally normal mental status findings in treatment notes, except sometimes anxious mood. AR at 74 (citing *id.* at 802, 804, 806, 823, 845, 848, 851, 982, 989, 1061, 1141, 1155, 1162, 1169, 1176, 1183, 1190, 1196, 1202, 1209, 1216, 1231, 1248, 1284, 1291, 1298, 1305, 1312, 1319, 1326, 1333). However, the record contains frequent observations of abnormal speech ("Slowed"), psychomotor ("Fidgeting"), and thought process ("Racing"; "Tangential"), as well as anxious mood, throughout the record,

including in many of the records the ALJ cited. *Id.* at 826, 829, 832, 835, 845, 848, 851, 854, 857, 860, 878, 933, 999, 1061, 1291, 1333. The ALJ did not address or acknowledge this conflicting evidence, despite the abnormal observations being recorded in a substantial proportion of Plaintiff's treatment notes.[4] *See Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) ("While ALJs obviously must rely on examples . . . , the data points they choose must *in fact* constitute examples of a broader development" (emphasis in original)); *Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017) (improper for ALJ to "cherry-pick" absence of certain symptoms from portions of the record). It is the ALJ's role to resolve conflicting evidence in the record, but the ALJ has not done so here. *See Smartt*, 53 F.4th at 494-95. An ALJ may not reject "significant probative evidence" without explanation, and treatment notes repeatedly reflecting abnormal mental status findings are clearly significant and probative. *Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995). Accordingly, the Court concludes that the ALJ's finding that Dr. Tapper's opinions were inconsistent with the record is not supported by substantial evidence. AR at 74.

Because the ALJ did not provide a valid reason supported by substantial evidence to discount Dr. Tapper's opinions, he erred by rejecting them.

*2. Kathleen Dee, PMHNP*

Ms. Dee examined Plaintiff in October 2022 and reviewed his medical records. AR at 998-1002. The ALJ found Ms. Dee's opinion partially persuasive. *Id.* at 73-74.

---

[4] The Court notes that, during the hearing, the ALJ himself expressed frustration with Plaintiff's ability to communicate. While Plaintiff was testifying, the ALJ stated: "I'm just about ready to say you're not going to be testifying. You know that? If you're this non-responsive, I'm not going to do this for a whole hour. We're not going to do it. If you can't answer promptly, when these are basic questions, we're not going to do it." AR at 146. Shortly thereafter, the ALJ decided to "defer testimony" from Plaintiff and have his caretaker testify on his behalf instead. *Id.* at 148.

Plaintiff contends the ALJ erred by failing to incorporate into the RFC Ms. Dee's opinion that Plaintiff "responds adequately to workplace pressures by telling the person in charge when he has a question or needs help, and by figuring out solutions to problems if possible." (Dkt. # 17 at 14-15 (quoting AR at 1002).) Plaintiff argues that this statement establishes that he needs special supervision incompatible with competitive work. (*Id.* at 14.)

The Commissioner contends the ALJ reasonably interpreted the statement as not setting forth a limitation for the need for special supervision, and Plaintiff's alternative explanation does not establish error. (Dkt. # 21 at 9.) The Court agrees. Ms. Dee opined that Plaintiff responded "adequately" to workplace pressures, which the ALJ reasonably did not interpret as a limitation. On reply, Plaintiff argues that Ms. Dee's statement, in combination with her mental status examination findings that Plaintiff is "easily sidetracked," he "needs repetitive instructions to learn new tasks," and "delays in the time it takes to think and respond are observed" mean that Plaintiff would require special assistance that other employees do not. (Dkt. # 22 at 2.) While that may be a reasonable interpretation, the ALJ's was also reasonable. Plaintiff acknowledges that Ms. Dee did not indicate how frequently he would need to ask questions (dkt. # 22 at 3), which underscores that she did not opine whether his questioning exceeded ordinary tolerances. The Court concludes Plaintiff has not shown the ALJ erred in assessing Ms. Dee's opinion.

**B. Plaintiff's Testimony**

Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). That said, the ALJ is not required to believe every allegation, nor to analyze testimony line by line. *See Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th

Cir. 2020). The question is not whether this Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

While Plaintiff did not substantively testify at the hearing, he provided Function Reports in February 2022 and August 2023. AR at 592-99, 609-19. In February 2022, Plaintiff lived with his grandmother, who was also his adoptive parent. *Id.* at 592. In August 2023, because his grandmother had passed away, her friend Celia Alpin had become Plaintiff's live-in aide, power of attorney, and personal representative, and helped him fill out the form due to his difficulty understanding the questions and finding the words to express himself. *Id.* at 619.

Plaintiff contends his need for his caregiver to "manage" him during the hearing established a need for special supervision. (Dkt. # 17 at 17.) After Plaintiff answered one question at the hearing and the ALJ asked a second question, the ALJ described Plaintiff as "non-responsive" and stated that if he "[could not] answer promptly, when these are basic questions," then he would not be permitted to testify. AR at 146. After Plaintiff attempted to explain that he was "trying to find the right wording" and the ALJ attempted one more question, the ALJ decided to "defer testimony" because it would be "very stressful for the Claimant, very difficult for the process." *Id.* at 147-48. The ALJ then told Ms. Aplin that she would "need to testify on behalf of the Claimant." *Id.* at 148. The ALJ told Plaintiff to "relax" and Ms. Aplin stated, "Just calm down now." *Id.* at 149; *see also id.* at 151 (Ms. Aplin testified that Plaintiff's "service cats . . . are surrounding him at the moment, because he's upset").

Courts hold that ALJs "may" rely on their observations of a claimant's demeanor at a hearing, although they may not discount the testimony on that sole basis. *See, e.g.*, *Abenicio F. C. v. Bisignano*, 2025 WL 2962195, at *2 (C.D. Cal. Oct. 17, 2025) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Khan v. Saul*, 855 F. App'x 343, 346 (9th Cir. 2021)).

Plaintiff does not provide any authority for the proposition that ALJs are *required* to assess their observations of a claimant's demeanor, however. While ALJs must assess all "significant probative evidence" in the record, the Court is wary of imposing a requirement to assess a claimant's demeanor at a hearing without statutory authority or support in the Commissioner's rules and regulations. *Flores*, 49 F.3d at 571; *see also* 20 CFR §§ 404.1520b, 416.920b (ALJ will "review all of the evidence relevant to your claim"). Because this matter must be remanded and Plaintiff will have the opportunity to raise these issues on remand, the Court need not address whether the ALJ erred by not considering Plaintiff's behavior at the hearing.

**C. The ALJ Erred in Rejecting Lay Witness Testimony**

In February 2022, Plaintiff's grandmother, Michelle E., reported that Plaintiff required reminders to shower and take medication, he could not prepare meals because he got sidetracked, and his grandmother and brother helped him care for his cats. AR at 585-86.

In a sworn statement in September 2024, Ms. Aplin described in detail Plaintiff's need for supervision to complete simple tasks, difficulty adapting to changes in his routine, freezing in response to unexpected or stressful events such as a grocery self-checkout machine beeping at him, inability to understand social interactions with people his own age, and difficulty exercising judgment.[5] AR at 725-35. He cannot sit through a one-hour television program. *Id.* at 729. Sweeping and vacuuming one room takes two to three hours because he needs to stop periodically to self-soothe by, for example, letting water run over his hands for long stretches of time. *Id.* at 731. He has difficulty following instructions of more than one step. *Id.* at 732. At the age of twenty, he plays with eight- to twelve-year-old children in the neighborhood and still

---

[5] Plaintiff erroneously states that Ms. Aplin reported "if the phone rings and Claimant is doing a task, Claimant forgets to return to the task after the phone call. Claimant cannot remember simple things that he is told, Claimant gets very angry over little things . . ." (Dkt. # 17 at 16.) These statements were in the instructions, not Ms. Aplin's description. AR at 725.

needs to check every ten minutes or so that his caregiver is home and available to help him if needed. *Id.* at 731. Ms. Aplin testified similarly at the hearing. *Id.* at 150-67, 175-79. For example, Plaintiff was too afraid to contemplate learning to drive. *Id.* at 154. If she sent him to a grocery store with a list, she had no idea what he would come back with. *Id.* He could not manage his own money and could not live independently. *Id.* at 161-62.

Rebecca Hamlin submitted a declaration describing two summers Plaintiff worked for her baling hay, one to four hours at a time for a total of about 30 hours each summer. AR at 741-42. He worked at a slow pace, was overwhelmed easily, and was permitted "breaks he needs to allow him to reset and get back on track." *Id.* at 741.

The ALJ acknowledged the lay witness testimony and stated that he was "not required to articulate how evidence from nonmedical sources is evaluated using the requirements in paragraph (a) through (c) in [20 C.F.R. § 416.920c]." AR at 75. That regulation sets forth standards for considering medical opinion evidence and section (d) clarifies that those standards do not apply to nonmedical sources. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Whether or not ALJs must articulate their assessment of lay witness testimony in every instance, it is undisputed that ALJs must not reject significant probative evidence without comment. Here, the lay witness statements are probative of Plaintiff's limitations.

The Commissioner argues that, even if the ALJ was required to articulate his assessment of the lay witness statements, any error was harmless because the ALJ's reasons for discounting Plaintiff's allegations apply. (Dkt. # 21 at 14.)

The ALJ discounted Plaintiff's reports of difficulty following instructions, completing tasks, getting along with others, and handling stress as inconsistent with the medical record showing appropriate eye contact, calm and cooperative behavior, normal thought process and

content, and his reports of "doing pretty good" or his mood being "fine." AR at 70-72. As discussed above with regard to Dr. Tapper's opinions, the ALJ did not acknowledge multiple reports of abnormal thought process and many other abnormal mental status findings. An ALJ may not reject evidence based on an inaccurate portrayal of the record. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's decision unsupported by substantial evidence where his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record"). Plaintiff's reports of doing "good" or "fine" do not contradict the substantial difficulty the lay witnesses described in handling ordinary daily tasks and situations. *See also Garrison*, 759 F.3d at 1017 ("improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace").

The ALJ did not provide a valid reason supported by substantial evidence to reject the lay witness testimony. The Court concludes the ALJ harmfully erred.

**D. Evidence Submitted to the Appeals Council**

Plaintiff submitted to the Appeals Council a February 2025 opinion from Dr. Hopfenbeck. AR at 9-27. Dr. Hopfenbeck opined on a checklist form that, for at least 30% of a workday, Plaintiff was unable to understand and remember simple instructions, maintain concentration for two-hour periods, maintain punctual attendance, sustain an ordinary routine without special supervision, work near or with others without distraction, ask simple questions or request assistance, maintain appropriate behavior, or respond appropriately to changes. *Id.* at 9-11. He opined Plaintiff would miss at least five days of work per month due to his impairments and treatment, and assessed Plaintiff as meeting listed impairments for anxiety, autism, and neurodevelopmental disorders. *Id.* at 12-13. Dr. Hopfenbeck stated that the bases for his opinion were Plaintiff's history and medical file, progress and office notes, consultative medical

opinions, psychological evaluations, and his own direct psychiatric examination. *Id.* at 11. In a narrative assessment, Dr. Hopfenbeck opined Plaintiff's "inability to perform even basic tasks without direct supervision and support involving frequent reorientation" would preclude work. *Id.* at 35. He would be "frequently off task" and need "constant reassurance and reorientation[.]" *Id.*

When additional evidence is submitted for the first time to the Appeals Council, the Court must consider whether the ALJ's decision remains supported by substantial evidence in light of the new evidence. *See Brewes v. Comm'r of Soc. Sec.*, 682 F.3d 1157, 1163 (9th Cir. 2012). Plaintiff bears the burden to "demonstrate that there is a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (citation omitted). However, because this matter must be remanded, the ALJ will have the opportunity to address Dr. Hopfenbeck's 2025 opinion.

**E. Listed Impairment**

Plaintiff contends the ALJ erred by finding he had a marked limitation in interacting with others, instead of an extreme limitation. (Dkt. # 17 at 4-6.) A marked limitation means sustained independent functioning in that area is "seriously limited," while an extreme limitation reflects the claimant is unable to sustain independent functioning in that area. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(F)(2)(d), (e).

The ALJ noted Plaintiff's reports that he lives with his grandmother and brother and socializes with family, prefers his brother accompany him outside home because he feels stressed around other people, has a difficult time understanding verbal and nonverbal cues, and has friends but tends to self-isolate. AR at 69.

Plaintiff contends this evidence is "consistent" with extreme limitations and "would at least suggest a need for special supervision" because all his interactions are with or mediated by family members. (Dkt. # 17 at 5.) These arguments do not establish error, however, as Plaintiff has not shown that the evidence is inconsistent with a marked limitation. At most he offers an alternative interpretation of the evidence.

### F. Scope of Remand

Plaintiff requests remand for an award of benefits or, in the alternative, for further administrative proceedings. (Dkt. # 17 at 17-18.) Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Court may award benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) "the record has been developed thoroughly and is free of conflicts, ambiguities, or gaps"; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* at 1045, 1047. Here, Plaintiff simply asserts that the conditions have been met. (*See* dkt. ## 17 at 17-18, 22 at 9.) While the Court agrees the ALJ improperly rejected evidence, the record contains conflicts or ambiguities such as some normal and some abnormal mental status findings. Under the circumstances, remand for further proceedings is the appropriate remedy.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should assess the medical opinion evidence and lay witness testimony, reevaluate step three and the RFC as appropriate, and proceed to steps four and five as necessary.

Dated this 21st day of July, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge